**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| Phyllis M. Westmoreland, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 09-CV-2453 AW |
| | * | |
| Prince George's County, Maryland, et al., | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Plaintiff Phyllis Westmoreland ("Plaintiff") brings this employment discrimination action against Defendant Prince George's County, Maryland ("Defendant")[1] alleging claims of discrimination based on her race and gender, hostile work environment based on her gender, and retaliation for having engaged in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, ("Title VII"). Currently pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons that follow, Defendant's Motion will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiff's Complaint names as Defendant the Prince George's County Fire/EMS Department. However, as Defendant correctly notes, the Prince George's County Fire/EMS Department is not a legal body able to sue or be sued. Plaintiff has conceded this point and has properly recaptioned the instant case in her opposition motion.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are either uncontroverted or construed in a light most favorable to the Plaintiff.  Plaintiff Westmoreland is an African-American female who has worked for the Prince George's County Fire/EMS Department (the "Department") for approximately twenty years.  Plaintiff was hired as a career Fire Fighter on or about October 9, 1989, and she currently maintains the position of Fire Lieutenant.  Plaintiff alleges that she began experiencing harassment and discrimination at the Fire/EMS Training Academy (the "Academy") in August 2005.

In April 2006, Plaintiff and thirty-eight other members of the Department were students at the Officer Coordinator School ("OCS") being conducted at the Academy. Captain Kenneth Tucker ("Captain Tucker") was the instructor in charge of the OCS Program.  At the end of the course, the OCS students were supposed to take the Fire Officer I and II tests that were necessary for state and national certification.  However, Captain Tucker made a decision not to administer the tests, and instead have the students submit blank answer sheets.  Captain Tucker then gave each student a score for the exam and forwarded these scores to the state and national certification agencies for processing (these events will hereafter be referred to as the "Cheating Incident.").[2]

In June 2006, Plaintiff allegedly heard rumors about her circulating throughout the Academy concerning her involvement in the Cheating Incident.  According to Plaintiff, she reported these rumors to her immediate supervisor, Mr. Samuel Gross ("Mr. Gross").  On June 29, 2006, Plaintiff was allegedly informed that Mr. Gross had accused her of conspiring with Captain Tucker not to administer the Fire Officer I and II tests.  On

---

[2] Plaintiff admits that she did submit a blank answer sheet and had her scores forwarded to the certification agencies.

the morning of June 30, 2006, Plaintiff contacted Mr. Gross to ask him if he accused her of conspiring with Captain Tucker in not administering the Fire Officer I and II tests. Mr. Gross replied in the negative.

On June 30, 2006, after speaking with Mr. Gross, Plaintiff informed Acting Major Chauncey Bowers ("Major Bowers") of her intent to file an internal EEO charge of discrimination against Mr. Gross because she felt like Mr. Gross was unfairly targeting her with regard to her involvement in the Cheating Incident. According to Plaintiff, Bowers asked her to wait one more day before taking action, but Plaintiff declined. On June 30, 2006, Plaintiff filed her internal EEO charge with Mr. Eugene Jones, the Department's EEO Officer.[3]

On July 3, 2006, Defendant requested a transfer of Plaintiff out of the Academy allegedly due to a pending investigation concerning Plaintiff's involvement in the Cheating Incident. According to Plaintiff, the transfer request was made without following protocol and without seeking proper approval. The transfer request was rescinded after Plaintiff reported it to the Department's EEO office. On October 10, 2006, Plaintiff was notified that she was being transferred to Fire Station 40 ("Station 40"), effective October 18, 2006. Plaintiff alleges that after the July 3, 2006, transfer was

---

[3] Plaintiff's Complaint states that she filed her internal EEO charge "*on or about* June 30, 2006." (Compl. ¶ 27) (emphasis supplied.) At this stage in the litigation, the Court must normally "accept all factual allegations contained in the Complaint as true." *See, e.g.*, *Francis v. Gracomelli*, 588 F.3d 186, 192 (4th Cir. 2009). In the instant case, however, the exact date on which Plaintiff filed her charge is not apparent from the face of the Complaint. According to Defendant, Plaintiff contacted Mr. Jones via telephone to "orally file" her EEO charge on June 30, 2006. Defendant argues that the oral complaint constitutes an "informal" charge. Defendant states that Plaintiff did not file her written (and thus "formal") EEO complaint with Mr. Jones until July 3, 2006, after she received notice that she would be transferred out of the Academy. Thus, the exact date on which Plaintiff filed her "formal" EEO charge is a fact in dispute.

The EEOC Determination states that Plaintiff filed her internal EEO charge on June 30, 2006. (*See* Doc. No. 7, Ex. 1.17.) Thus, for purposes of evaluating Defendant's motion to dismiss, the Court finds that Plaintiff filed her EEO charge on June 30, 2006. *See Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (noting that where the allegations in a complaint conflict with the attached documents, the exhibits prevail) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

rescinded, Defendant attempted to transfer her "approximately [seven] times." (Doc. No. 7, Ex. 1.16 at 3.)

Plaintiff alleges that after filing her EEO charge, she was subjected to harassment, discriminatory discipline measures, and retaliatory conduct by Mr. Gross and other management-level employees at the Academy. (*See* Compl. ¶ 28.) On October 13, 2006, Plaintiff received a "marginal satisfactory" performance rating of 1.95 out of 4.0. (Compl. ¶ 35.) Plaintiff alleges that the October 13, 2006, performance evaluation was inconsistent with the performance rating of 3.95 out of 4.0 that she received in May 2006. Plaintiff further alleges that from October 18, 2006, to November 16, 2006, Defendant brought three Step III disciplinary actions against her. According to Plaintiff, this record of discipline was inconsistent with her record of discipline throughout her seventeen years of employment.

On October 20, 2006, Plaintiff filed her formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation for engaging in protected activity under Title VII. Defendant received notice of the charge on October 30, 2006.[4] The EEOC issued its Determination on April 21, 2008, and Notice of Right to Sue on June 22, 2009.

On September 18, 2009, Plaintiff filed a complaint in this Court, pursuant to Title VII, alleging discrimination on the basis of sex and race, retaliation for having engaged in protected activity, and hostile work environment based upon her gender. Now pending before the Court is Defendant's Motion to Dismiss, or in the Alternative, Motion for

---

[4] Plaintiff's Complaint states that she filed her EEOC charge on October 6, 2006. (Compl. ¶ 33.) However, Defendant has submitted a copy of Plaintiff's charge of discrimination, which clearly indicates that it was filed with the EEOC on October 20, 2006. (*See* Doc. No. 7, Ex. 1 at 3.) Plaintiff's Complaint also states that Defendant received notice of the EEOC charge "on or about October 10, 2006." To be clear, however, Defendant received notice of Plaintiff's charge on October 30, 2006 . (*See* Doc. No. 7, Ex. 1.16.)

Summary Judgment (Doc. No. 7).  For the reasons set forth below, Defendant's Motion will be **GRANTED IN PART** and **DENIED IN PART**.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(6) Standard

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.  8(a)(2).  In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 556 n.3.  That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

In addressing a motion to dismiss, a court should first review a complaint to determine which pleadings are entitled to the assumption of truth.  *See Iqbal*, 129 S. Ct. at 1949-50.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1954.  In its determination, the court must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286

(1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id*. at 511-12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id*. Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id*. at 512; *see also Twombly*, 550 U.S. at 569-70 (explaining that *Swierkiewcz* is consistent with more recent case law).[5]

---

[5] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009), the analysis cited here remains good law. *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'") (citations omitted).

## B. Consideration of Matters outside of the Pleadings

When "matters outside the pleadings are presented to and not excluded by the court, [a 12 (b)(6)] motion must be treated as one for summary judgment," and "[a]ll parties must be given reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In interpreting the requirements of this rule, the Fourth Circuit has held that the term "reasonable opportunity" requires that all parties be given "some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits and pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citations and quotations omitted). However, when a party is "aware that material outside the pleadings is before the court," the party has notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment. *Id.* However, notification that a Rule 12(b)(6) motion may be converted is only one of the requirements of Rule 12. Before a Rule 12(b)(6) motion may be converted and summary judgment granted, the court must be satisfied that the nonmoving party "has . . . had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 91 L.Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted).

Plaintiff had adequate notice that Defendant's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are themselves sufficient indicia.[6] *See Laughlin v. Metro Washing Airports Auth.*, 149 F.3d

---

[6] The Court notes that a number of documents were attached to Plaintiff's Complaint, Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and Plaintiff's Opposition Motion. However, the Court will not consider any matters outside the pleadings, with the exception of Plaintiff's internal EEO complaint and Plaintiff's EEOC charge of discrimination. *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 750 (D. Md. 1997) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561, 118 L.Ed.2d 208 (1992)) (noting that a court ruling on a Rule 12(b)(6) motion may consider documents which are referred to in the Complaint and upon which [the plaintiff] relies in bringing the action, without converting it to a motion for

253, 260-61 (4th Cir. 1998).  Still, notice is not enough.  Once notified, a party must be afforded a "reasonable opportunity for discovery" before a Rule 12(b)(6) motion may be converted and summary judgment granted.  *Gay*, 761 F.2d at 177.  Such an opportunity was not afforded in the instant case.

Plaintiff has filed, contemporaneously with her opposition, an affidavit explaining specific legitimate needs for discovery.  Plaintiff points out that her claims remain undeveloped because discovery has not occurred and several areas of inquiry which would support material fact issues remain outstanding and require further discovery.  In particular, because Plaintiff has not been allowed to conduct discovery, she cannot effectively and properly oppose Defendant's motion for summary judgment.  Additionally, Plaintiff has not had the opportunity to conduct key depositions so she is unable to rebut Defendant's allegations as to her internal complaints of harassment, discrimination and hostile work environment, nor has she had the opportunity to depose any individuals implicated in the Cheating Incident.  As such, Plaintiff has shown that there are colorable issues for which discovery is necessary.  Accordingly, the Court will only evaluate Defendant's Motion under the 12(b)(6) standard.[7]

## C.  <u>ANALYSIS</u>

### A.  Exhaustion of Administrative Remedies

Defendant maintains that Plaintiff's Title VII race and sex discrimination claims should be dismissed for lack of subject matter jurisdiction because Plaintiff has not exhausted her administrative remedies under Title VII.  A Title VII Plaintiff is required to

---

summary judgment); *see also New Beckley Min. Corp. v. Int'l Union, United Mine Workers of America*, 18 F.3d 1161, 1164 (4th Cir. 1994).

[7] Because Defendant's pending Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is only being evaluated under the motion to dismiss standard, it will be referred to hereinafter simply as "Motion to Dismiss."

exhaust administrative remedies before bringing a claim in federal court. 42 U.S.C. § 2000e-5(e)(1). The purpose of the exhaustion requirement is to ensure "that the employer is put on notice of the alleged violations so that the matter can be resolved out of court[,] if possible." *Miles v. Dell, Inc*., 429 F.3d 480, 490 (4th Cir. 2005) (citation omitted). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). However, "it does not strictly limit a Title VII suit which may follow; rather, the scope of the civil suit is confined only by the scope of the administrative investigation that can be reasonably expected to follow the charge." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). In other words, "[i]n determining what claims have been administratively exhausted, the litigant is not limited to the 'precise' wording of his formal EEOC charge of discrimination, but may litigate 'all claims of discrimination uncovered in a reasonable EEOC investigation of that charge.'" *Talbot v. U.S. Foodservice, Inc.,* 191 F. Supp. 2d 637, 640 (D. Md. 2002) (quoting *Hubbard v. Rubbermaid, Inc.*, 436 F. Supp. 1184, 1189 (D. Md. 1977)).

Here, Defendant claims that Plaintiff's Title VII race and sex discrimination claims must be dismissed for failure to exhaust administrative remedies because she did not check the "race" and "sex" boxes on her EEOC Charge, and did not allege claims of race and sex discrimination in the body of the Charge. However, the EEOC's investigation revealed evidence of discrimination on the basis of race and sex, and these grounds for discrimination were included in its reasonable cause determination. (*See* Doc. No. 7, Ex. 1.17 at 2.) As such, the Court finds that Plaintiff's claims arose out of a reasonable investigation of her EEOC charge. Accordingly, Plaintiff's failure to check

the "race" and "sex" boxes on her EEOC charge does not preclude her race and sex discrimination claims in this case. *See E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976) (holding that an original E.E.O.C. charge is "sufficient to support . . . a civil suit under the Act for any discrimination . . . developed in the course of a reasonable investigation of that charge, provided that such discrimination was included in the reasonable cause determination of the E.E.O.C.").

### B. Timeliness of Plaintiff's Race and Sex Discrimination Claims

Under Counts I and II of her Complaint, Plaintiff asserts claims of race and sex discrimination based on events that allegedly occurred in August 2005. Defendant contends that these claims must be dismissed because they are time-barred due to Plaintiff's failure to file an EEOC charge within 300 days of the alleged violations.

To bring a Title VII claim in federal court, "a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC." *Edelman v. Lynchburg Coll.*, 228 F.3d 503, 506 (4th Cir. 2000). In a state, such as Maryland,[8] a Title VII claim of discrimination or retaliation must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). "If a charging party fails to comply with this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not be subsequently challenged in a Title VII suit." *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 592 (D. Md. 2000). Here, Plaintiff filed her EEOC charge on October 20, 2006. Thus, Plaintiff's claims based on allegedly

---

[8] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state due to the Maryland Commission on Human Relations, a state agency that is capable of providing relief from discrimination.

discriminatory acts occurring prior to December 24, 2005, are time-barred and not properly before the Court. *See, e.g.*, *Beall v. Abott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) ("[i]ncidents outside the statutory window are time-barred"). Accordingly, the Court must dismiss Plaintiff's claims for race and gender discrimination based on events that allegedly occurred in August 2005. The Court notes, however, that Plaintiff's race and sex discrimination claims based on events that allegedly occurred after December 24, 2005, are properly before the Court.

### C. Plaintiff's Sex and Race Discrimination Claims (Counts I & II)
#### 1. Step III Disciplinary Charges

Plaintiff claims that Defendant subjected her to discriminatory discipline on the basis of race and sex in violation of Title VII. Specifically, Plaintiff claims that "[o]ut of the thirty-nine . . . students [involved in the Cheating Incident, she] was the only individual who was singled out and disciplined at the most severe level of a Step III discipline." (Compl. ¶¶ 41, 52.) To establish a *prima facie* case of race or sex discrimination in the enforcement of employee disciplinary measures, Plaintiff must show that: (1) she is a member of a class protected by Title VII, (2) the prohibited conduct in which she engaged was comparable in seriousness to the misconduct of employees outside of the protected class, and (3) the disciplinary measures enforced against here were more severe than those enforced against those other employees. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).

The first element of the *prima facie* case is clearly satisfied as Plaintiff is an African-American female, and thus a member of a protected class. However, Plaintiff has failed to sufficiently plead the second and third elements. With regard to the second element, the Complaint does not discuss the race or gender of Plaintiff's alleged

comparators (the other thirty-eight students involved in the Cheating Incident). Without such information, the Court cannot make the inference that Plaintiff was the subject of discrimination on the basis of her race or sex. As to the third element, Plaintiff concedes that the disciplinary charges brought against her and the other thirty-eight students involved in the Cheating Incident were eventually dropped. Because the proposed disciplinary actions against Plaintiff and the other thirty-eight students were ultimately dropped, Plaintiff cannot satisfy the requirement of showing that "the disciplinary measures *enforced against* her were more severe than those enforced against other employees." *Cook*, 988 F.2d at 511 (emphasis added). Accordingly, Plaintiff has failed to make a *prima facie* showing on her discriminatory discipline claim. Therefore, the Court will grant Defendant's motion to dismiss as to this claim with prejudice.

### 2. Transfer out of the Academy

Plaintiff purports to allege that defendant subjected her to discrimination on the basis of race and sex when she was transferred out of the Academy on October 10, 2006. It appears that Plaintiff is attempting to proceed in this case under a disparate treatment theory. "Disparate treatment is said to define a situation where the employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." *Taylor v. Sec'y of Army*, 583 F. Supp. 1503, 1507 (D. Md. 1984) (citing *Wright v. Nat'l Archives & Records Serv.*, 609 F.2d 702, 711 (4th Cir. 1979)). To plead an actionable claim of disparate treatment, Plaintiff must state facts demonstrating that: (1) she is a member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to adverse employment action; and (4) similarly situated employees outside her class received more favorable treatment. *Prince-Garrison v. Md. Dept.*

*Health & Mental Hygiene*, 317 Fed App'x 351, 353 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)).

It is uncontested that Plaintiff satisfies the first two elements of the *prima facie* case. First, she is an African-American female, and therefore a member of a protected class. Second, Defendant concedes that Plaintiff was an exemplary performer. As to the third element, without more facts and sufficient evidence, which may be obtained through discovery, the Court is not prepared, at this time, to determine whether Plaintiff suffered "adverse employment action." *See Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001) (noting that "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution").

However, Plaintiff has not alleged sufficient facts to demonstrate that similarly situated employees outside of her protected class were treated differently. To establish this element, "the plaintiff must identify a 'comparator,' *i.e.*, someone who is 'similarly situated' to the plaintiff and who engaged in similar misconduct." *Hoffman v. Balt. Police Dep't*, No. 04-3072, 2009 U.S. Dist. LEXIS 6626, at *50 (D. Md. Jan 21, 2009). Here, Plaintiff has failed to identify any relevant comparator(s) as to which the Court can compare her conduct. Therefore, the Court cannot determine whether the alleged disparate treatment was a product of race and/or gender discrimination. Accordingly, the Court cannot find that Plaintiff has sufficiently alleged a *prima facie* claim for disparate treatment based on her transfer out of the Academy. The Court will allow Plaintiff to amend her Complaint to plead the necessary facts to support her claim for disparate treatment based on her transfer out of the Academy on August 10, 2006.

Plaintiff also contends that her reassignment to Station 40 was discriminatorily based upon her race and gender. To sufficiently plead a *prima facie* case of discrimination due to a reassignment, Plaintiff must show that: (1) she is a member of a protected class; (2) she was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) she was replaced by someone of comparable qualifications outside her protected class, *Jyachosky v. Winter*, 343 Fed. App'x 871, 876 (4th Cir. 2009) (citing *Holland*, 487 F.3d at 214)).

It is undisputed that Plaintiff is a member of a protected class and that she was performing her job at an acceptable level. Furthermore, as discussed above, at this early stage in the litigation the Court will not make a determination as to whether Plaintiff suffered adverse employment action. Moreover, Plaintiff alleges that after she was transferred out of the Academy, she was replaced by two Caucasian males, (*see* Compl. ¶ 54), thus satisfying the fourth element. Accordingly, the Court finds that Plaintiff has set forth sufficient facts to survive Defendant's Motion to Dismiss. Therefore, the Court will deny Defendant's Motion to Dismiss as to Plaintiff's discriminatory reassignment claim.

### 3. Failure to Investigate

Plaintiff also claims that she was subjected to disparate treatment because "when [she] asked for assistance in investigating allegations made against her that called into question her competence and integrity, Defendant[] failed to investigate any of these allegations." (Compl. ¶¶ 43, 52.) Plaintiff's second disparate treatment claim fails because she has failed to sufficiently plead the fourth element of the *prima facie* case. As discussed above, the Complaint does not identify any relevant comparator(s), nor does it discuss the race or gender of the employees outside of Plaintiff's protected class who were allegedly treated differently. As such, the Court cannot make the inference that the

alleged disparate treatment was based upon Plaintiff's race or gender. The Court will allow Plaintiff to amend her Complaint to allege the necessary facts to support her second disparate treatment claim.

### D.  Plaintiff's Retaliation Claims (Count III)

In Count III, Plaintiff asserts a claim for retaliation for engaging in protected activity.  Specifically, Plaintiff alleges that in response to her filing an internal EEO complaint on June 30, 2006, Defendant engaged the following retaliatory actions: (1) attempting to transfer Plaintiff out of the Academy on July 3, 2006; (2) giving Plaintiff a "marginal satisfactory performance evaluation" on October 13, 2006; (3) instituting three Step III disciplinary actions against Plaintiff; and (4) involuntarily transferring Plaintiff out of the Academy on October 10, 2006.

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal connection between the protected activity and the adverse action. *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 656 (4th Cir.  1998).  It is undisputed that Plaintiff's filing of her internal EEO complaint constitutes protected activity.  *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (holding that prior EEO complaints constitute protected activity).

To satisfy the second element, Plaintiff must show that she suffered an adverse employment action that a reasonable employee would have found materially adverse. The standard for demonstrating a materially adverse employment action is less stringent for a Title VII retaliation claim than it is for a substantive discrimination claim under Title VII.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006) Nevertheless, a plaintiff is still required to demonstrate actual harm or injury caused by

the retaliatory conduct.  *Id.*  Unlike Title VII's substantive provisions, however, the anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64.  Rather, Plaintiff need only allege that a reasonable employee would have found the action "materially adverse," meaning it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68.

"Whether an action is materially adverse will, in most cases, require a fact-intensive analysis."  *McClintock v. Leavitt*, No. 05-2880, 2007 U.S. Dist. LEXIS 21331, at *20 (D. Md. Mar. 26, 2007) (discussing the element of "adverse employment action" in the context of a Title VII retaliation claim).  Presumably, many essential facts are missing from the record because discovery has not commenced.  Accordingly, the Court believes that it is too early in the litigation to make an ultimate determination as to whether Plaintiff suffered adverse employment action.  *See Retirement Sys. of LA v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007) ("[U]nder this scheme of notice pleading and broad discovery, consideration of a motion to dismiss must account for the possibility that a noticed claim could become legally sufficient if the necessary facts were to be developed during discovery."); *see also  Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) ("a district court may dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief").  Therefore, the only remaining question with respect to Plaintiff's retaliation claims is whether she has satisfied the pleading standard for the third element of the *prima facie* case of retaliation.  As noted above, Plaintiff alleges four separate grounds for her retaliation claim.  The Court considers each in turn.

### 1. Retaliation Claim Based Upon Transfer

Plaintiff first claims that Defendant retaliated against her for filing an internal EEO complaint by attempting to transfer her out of the Academy on July 3, 2006. The dispositive question is whether Plaintiff can make a *prima facie* showing of causation so as to satisfy the third element. "[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse action against the employee shortly after learning of the protected activity." *See Price*, 380 F.3d at 213 (citing *Williams v. Cerebonics*, 871 F.2d 452, 457 (4th Cir. 1989)). Here, the Court will infer that Plaintiff engaged in protected activity on June 30, 2006, when she filed her internal EEO charge with Mr. Jones. Defendant received notice of Plaintiff's charge on that same day. Then, on July 3, 2006, Defendant attempted to transfer Plaintiff out of the Academy. Thus, the alleged adverse employment action occurred three days after defendant learned of the protected activity. As such, the Court may, at this stage of the litigation, infer a causal connection between the two events. *See, e.g.*, *Silva v. Bowie State Univ.*, 172 Fed. App'x 476, 478 (4th Cir. 2006) (holding that a ten-week lapse of time sufficiently established a causal connection to survive a motion to dismiss). Therefore, the Court will allow Plaintiff's to proceed on her first retaliation claim.

### 2. Retaliation Claim Based Upon Marginal Performance Evaluation

Plaintiff next claims that she received a "marginal satisfactory performance evaluation" on October 13, 2006, in retaliation for filing an internal EEO complaint on June 30, 2006. Defendant contends that Plaintiff has not presented sufficient facts to make out a *prima facie* showing of causation. One of the ways a plaintiff may prove causation is by showing that the "temporal proximity between the protected activity and

the adverse employment action" is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam). Although there is no bright-line rule on the issue of temporal proximity, the Fourth Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality. *See, e.g.*, *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006) (three-to-four month period too long to establish causation). As such, retaliatory intent cannot be inferred from the proximity between Plaintiff's June 30, 2006, internal complaint and her October 13, 2006, performance evaluation. Accordingly, Plaintiff cannot establish a *prima facie* showing of causation under the "temporal nexus theory."

However, the Court will not dismiss Plaintiff's second retaliation claim simply because she cannot rely on the "temporal nexus theory" to establish causation. In cases where the temporal proximity between the protected activity and the allegedly retaliatory conduct is not "very close," courts may look to the intervening period for other evidence of retaliatory animus" which "may be used to establish causation." *Letteri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (citations omitted). Viewing the Complaint in its entirety, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that a court must "consider the complaint in its entirety" when ruling on a Rule 12(b)(6) motion to dismiss), the Court finds that at least two events occurred between Plaintiff's filing of the EEO charge and Plaintiff's receipt of the October 13, 2006, performance evaluation that might give rise to a showing of retaliatory animus: Defendant's attempt to transfer Plaintiff out of the Academy on July 3, 2006, and Defendant's successful involuntary transfer of Plaintiff out of the Academy on October

10, 2006.  Furthermore, Plaintiff alleges that her performance evaluation was issued by Mr. Gross, the supervisor against whom she filed her internal EEO complaint.  This allegation also creates an inference that Defendant harbored retaliatory animus against Plaintiff.  Moreover, the parties, in their briefs, suggest that the attempted transfer was held in abeyance pending the outcome of the investigation of Plaintiff's involvement in the Cheating Incident, but that Plaintiff was involuntarily transferred out of the Academy shortly after the investigation concluded.  Accordingly, the Court finds that Plaintiff has sufficiently plead a claim for retaliation at this stage of the litigation, and will therefore allow Plaintiff to proceed on this claim.

### 3. Plaintiff's Retaliation Claim Based Upon Three Step III Disciplinary Charges

Plaintiff also claims that the three Step III disciplinary charges filed against her on October 18, 2006, November 2, 2006, and November 16, 2006, were in retaliation for filing an internal EEO complaint on June 30, 2006.  Plaintiff does not allege any direct evidence of retaliatory intent.  Instead, she appears to argue that retaliation can be inferred from the proximity between her internal EEO complaint and her receipt of the disciplinary charges.  The Court disagrees.  The earliest disciplinary action she alleges was in retaliation occurred on October 18, 2006—more than three months after she filed her EEO complaint.  The remaining two disciplinary actions took place on November 2, 2006 and November 16, 2006—more than four months after Plaintiff filed her EEO complaint.  Because more than three months passed between the protected activity and the alleged adverse actions, no presumption of causality can be established as to them.  *See, e.g.*, *Pascual*, 193 Fed. App'x at 233 (three-to-four month period too long to establish causation); *Tolley v. Health Care & Retirement*, No. 96-2094, 1998 U.S. App.

LEXIS 866, at *11 (4th Cir. Jan. 21, 1998) (holding that the single fact that the plaintiff was discharged four months after engaging in protected activity is insufficient to support a claim for retaliation); *Causey v. Balog*, 162 F.2d 795, 803 (4th Cir. 1998) (citing with approval *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (holding that four-month nexus was too weak to justify an inference of causation)); *see also Popo v. Giant Foods LLC,* 675 F. Supp. 2d 583, 590-91 (D. Md. 2009) (finding that "[t]he proximity between [the plaintiff's] June 2003 internal complaint and his October 2003 termination [was] . . . insufficient to establish a causal connection between the two events").

Plaintiff additionally fails to allege a claim of "recurring retaliatory animus" that would establish the necessary causal link. However, in viewing the Complaint in its entirety, the Court believes that several events took place between Plaintiff's filing of the internal EEO complaint and her receipt of the October 18, 2006, disciplinary charge that might give rise to a showing of recurring retaliatory animus, namely the attempted transfer on July 3, 2006, the successful involuntary transfer on October 10, 2006, and the allegedly negative performance evaluation given to Plaintiff on October 13, 2006.

With respect to the disciplinary charges brought against Plaintiff on November 2, 2006, and November 16, 2006, Plaintiff appears to claim that these charges were also in retaliation for her filing a charge of discrimination with the EEOC on October 20, 2006. To the extent that Plaintiff has alleged this claim, the Court will allow her to proceed. As stated previously, the Court may infer a causal connection where the alleged adverse action occurs "very close" to the filing of the EEOC charge. Here, Plaintiff filed her EEOC charge on October 20, 2006, and Defendant received notice of the charge on

October 30, 2006. Defendant then brought disciplinary charges against Plaintiff on November 2, 2006 and November 16, 2006. This short lapse of time is sufficient to establish *prima facie* causation. *See Webb v. Md. Dep't of Health & Mental Hygiene*, No. 04-387, 2006 U.S. Dist. LEXIS 71135, at *34 (D. Md. Sept. 14, 2006) (temporal proximity of "just over one month" sufficient to establish the element of causation). Therefore, the Court finds that Plaintiff alleged an actionable claim for retaliation under Title VII for the three Step III disciplinary charges.

### 4. Retaliation Based upon Transfer out of the Academy on October 10, 2006

Finally, Plaintiff purports to assert a claim of retaliation for her involuntary transfer out of the Academy on October 10, 2006. Defendant contends that Plaintiff has failed to establish the existence of a causal connection because her "transfer occurred six months after the Cheating Incident and three months after she filed her internal charge of discrimination." (Doc. No. 7 at 13.) To be sure, Plaintiff does not allege that the transfer was in retaliation for her alleged involvement in the Cheating Incident, but rather that it was in retaliation for her EEO filing on June 30, 2006. Thus, the issue is whether there was a causal connection between the protected activity and the asserted adverse action.

As in the situations discussed above, Plaintiff cannot establish a causal connection based upon temporal proximity, as the alleged adverse action (the involuntary transfer) took place more than three months after the protected activity. However, Plaintiff purports to allege a claim of "recurring retaliatory animus" to establish the necessary causal link. Specifically, Plaintiff asserts that Defendant "continued its efforts to transfer [Plaintiff] and ultimately forced her to involuntarily transfer out of the Academy . . . on October 10, 2006." (Compl. ¶ 30-31; *see also* Pl. Opp. Mot. at 4; Doc. No. 7, Ex. 1.17

(EEOC Determination).)  The Court finds this allegation sufficient to draw a "reasonable inference" of the existence of "recurring retaliatory animus" between when the period when filed her EEO complaint and when she was transferred out of the Academy on October 10, 2006.

In sum, Defendant's motion to dismiss Count III will be denied, and the Court will allow Plaintiff's retaliation claim to proceed on the four grounds discussed above.  It should be noted that in denying Defendant's motion to dismiss Plaintiff's retaliation claims, the Court is not making an ultimate finding that Plaintiff's claims will prevail. Instead, at this early stage in the litigation, where there has been no discovery and in construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented sufficient facts to survive a Rule 12(b)(6) motion to dismiss.

### E.  Plaintiff's Hostile Work Environment Claim (Count IV)

In Count IV, Plaintiff asserts a claim for hostile work environment based upon her gender.   Specifically, Plaintiff alleges that she began to experience gender-based harassment at the Academy in 2005[9] and that the "harassment came in the form of failure to thoroughly investigate complaints made by [Plaintiff], disciplining [Plaintiff] for charges that were previously dismissed, and planting false evidence that would question and undermine [Plaintiff's] competence and integrity."  (Compl. ¶ 65.)  To sufficiently plead a claim for hostile work environment, Plaintiff must show: (1) that she was harassed "because of" her "sex"; (2) that the harassment was unwelcome; (3) that the

---

[9] The fact that Plaintiff's hostile work environment claim is based in part on acts that allegedly occurred in August 2005 is not fatal to her claim.  The Supreme Court held in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), that "the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Id.* at 118.  Therefore, "a Title VII plaintiff seeking to recover for a hostile work environment claim can recover for acts occurring beyond [the 300-day period], as long as at least a portion of the hostile work environment occurred within the relevant limitations period." *Wang v. Metro Life Ins. Co.*, 334 F. Supp. 2d 853, 867 (D. Md. 2004) (citing *White v. BFI Waste Serv., LLC*, 375 F.3d 288, 292-93 (4th Cir. 2004)).

harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *See Smith*, 202 F.3d at 234.

Here, Plaintiff has made no factual showing that the alleged actions took place based on her gender. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face," meaning that the Court could draw "the reasonable inferences that the defendant is liable for the conduct alleged." *Iqbal*, 129 S. Ct. at 1940 (internal quotations and citation omitted). Conclusory allegations that Defendant subjected Plaintiff to a hostile work environment "because of her gender" are insufficient to state a claim when the facts of the Complaint do not support the conclusory allegation. *See Eastern Shore Mkts., Inc. v. J.D. Assocs., Ltd. Pshp.*, 213 F.3d at 180 (in reviewing a 12(b)(6) motion, "we need not accept the legal conclusions drawn from the facts"); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (noting that the proper inquiry at the motion to dismiss stage is whether the alleged facts, construed liberally, state a plausible claim for relief). Because there is no basis in the Complaint to conclude that Plaintiff was subjected to a hostile work environment based on her gender, the Court will dismiss Count IV. In so doing, the Court will grant Plaintiff leave to amend her Complaint to allege the necessary facts to support her claim for hostile work environment.

### D. CONCLUSION

In summary, the Court believes that Plaintiff has failed to adequately plead her claims for disparate treatment on the basis of race and sex with respect to her transfer out of the Academy on October 20, 2006 and Defendant's alleged failure to investigate.

Therefore, the Court will dismiss Plaintiff's disparate treatment claims alleged in Counts I and II with leave to amend. Additionally, the Court believes that, as a matter of law, Plaintiff has failed to sufficiently plead an actionable claim for discriminatory discipline on the basis of race or sex. Therefore the Court will dismiss Plaintiff's discriminatory discipline claims alleged in Counts I and II, with prejudice.

Furthermore, as to Plaintiff's discriminatory reassignment claims alleged in Counts I and II, the Court believes that Plaintiff has sufficiently alleged these claims. Accordingly, the Court will deny Defendant's Motion to Dismiss Plaintiff's discriminatory reassignment claims alleged in Counts I and II.

As to Plaintiff's Count III, the Court believes that Plaintiff has sufficiently alleged actionable claims for retaliation. Therefore, the Court will deny Defendant's Motion to Dismiss as to Count III.

Lastly, the Court believes that Plaintiff has failed to adequately plead a claim for hostile work environment. Therefore, the Court will dismiss Plaintiff's hostile work environment claim alleged in Count IV with leave to amend.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's claims for disparate treatment claims in Counts I and II, and Plaintiff's hostile work environment claim in Count IV, with leave to amend. Additionally, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's discriminatory discipline claims in Counts I and II, with prejudice. The Court also **DENIES** Defendant's Motion to Dismiss as to Plaintiff's discriminatory reassignment claims in Counts I and II, and Plaintiff's retaliation claims in Count III. A separate Order shall follow.

_____August 23, 2010_____                 _____/s/_____
        Date                                   Alexander Williams, Jr.
                                           United States District Judge