# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| PHYLLIS V. WESTMORELAND,<br><br>    Plaintiff,<br><br>        v.<br><br>PRINCE GEORGE'S COUNTY,<br><br>MARYLAND<br><br>    Defendant. | Civil Action No. 09-CV-2453 AW |

## MEMORANDUM OPINION

Plaintiff Phyllis M. Westmoreland brings this action against Defendant Prince George's County, Maryland. Ms. Westmoreland alleges claims of sex discrimination, racial discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act. Currently pending before the Court are the following motions: (1) Defendant's Motion to Dismiss Plaintiff's Amended Complaint; (2) Plaintiff's Motion to Withdraw the Amended Compliant; (3) Defendant's Motion to Strike Plaintiff's Second Amended Complaint; and (4) Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local Rule 105.6 (D. Md. 2008). For the reasons that follow, the Court will **DENY** Defendant's Motion to Dismiss Plaintiff's Amended Complaint; **GRANT** Plaintiff's Motion to Withdraw the Amended Complaint; **DENY-AS-MOOT** Defendant's Motion to Strike Plaintiff's Second Amended Complaint; and **DENY-AS-MOOT** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiff Phyllis M. Westmoreland's Amended Complaint (Doc. No. 29) and viewed in a light most favorable to her. Ms. Westmoreland is a 45-year-old African-American female. Defendant Prince George's County ("County") is a political subdivision of the State of Maryland. Ms. Westmoreland started working at the Prince George's County Fire Department ("Fire Department") as a firefighter in 1989. Ms. Westmoreland performed admirably during her tenure as a firefighter, eventually earning the rank of Fire Lieutenant.

Sometime after becoming a Fire Lieutenant, Ms. Westmoreland began advocating for women's rights at the Fire Department. Ms. Westmoreland devoted herself to this cause because she perceived that other female firefighters faced "difficulty and hardship." (Doc. 29, at 3). Ms. Westmoreland also wanted to ensure that female firefighters received adequate support and equal representation in leadership positions.

In August of 2005, Ms. Westmoreland attended the Fire/EMS Training Academy ("Academy"). Ms. Westmoreland was one of a few African-African females at the Academy. Ms. Westmoreland started to feel scrutinized in her judgment and ability and attributed this treatment to her status as a woman. Ms. Westmoreland also received "special detail," which involved assisting with recruiting and implementing an "Explorers" program. (Doc. 29, at 4.) Furthermore, Ms. Westmoreland persistently heard rumors regarding her conduct toward recruits. Ms. Westmoreland reported these issues to her immediate supervisor, Mr. Samuel Gross. Mr. Gross ignored her complaints, and the Fire Department failed to investigate them.

Around this time, Ms. Westmoreland was implicated in a cheating scandal at the Academy. The scandal involved thirty-nine students at the Officer Candidate School. Although

an investigation cleared all thirty-nine students of wrongdoing, Ms. Westmoreland alleges that she was singled-out for discipline. Ms. Westmoreland also reported this incident, and contends that the Fire Department failed to investigate it.

On June 30, 2006, Ms. Westmoreland informed Mr. Gross that she planned to file an internal EEO charge based on the incidents at the Academy. On July 3, 2006, the Fire Department requested that Ms. Westmoreland be transferred from the Academy. Upon Ms. Westmoreland's immediate protest, the Fire Department rescinded its request. Nevertheless, the Fire Department continued its efforts to transfer Ms. Westmoreland. Against her wishes, the Fire Department transferred Ms. Westmoreland from the Academy on October 10, 2011. Two white males replaced her. Between July of 2006 and May of 2007, the Fire Department disciplined Ms. Westmoreland five times even though it had not disciplined her in her prior seventeen years of employment.

On October 20, 2006,[1] Ms. Westmoreland filed a formal charge of discrimination with the EEOC. On October 30, 2006, the County received notice of the charge. The EEOC issued its Determination on April 21, 2008, and its Notice of Right to Sue on June 22, 2009.

On September 18, 2009, Ms. Westmoreland filed a Complaint in this Court (Doc. No. 1). Count I of the Complaint asserted a claim for sex discrimination. Count II asserted a claim for

---

[1] Ms. Westmoreland's Amended Complaint states that she filed her EEOC charge on October 6, 2006. The County has submitted a copy of Plaintiff's EEOC charge that clearly indicates that Ms. Westmoreland filed the charge with the EEOC on October 20, 2006. (*See* Doc. No. 7-3.2) Ms. Westmoreland's Amended Complaint also states that the County received notice of the EEOC charge "[o]n or about October 10, 2006." (Doc. 29, at 5–6.) To be clear, however, the County received notice of Ms. Westmoreland's charge on October 30, 2006. (*See* Doc. No. 7-1.16.).

In a prior Memorandum Opinion (Doc. No. 22), the Court relied on Ms. Westmoreland's EEOC charge and an EEOC notice attached to the County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. No. 7) to determine these exact dates. *Westmoreland v. Prince George's Cnty., Md.*, No. 09-CV-2453 AW, 2010 WL 3369169, at *2 n.4. (D. Md. Aug. 23, 2010). The Court may consider these documents without converting the County's Motion to Dismiss the Amended Complaint into a motion for summary judgment for two basic reasons. First, the documents are integral to Ms. Westmoreland's Amended Complaint. *See, e.g.*, *White v. Mortg. Dynamics, Inc.*, 528 F. Supp.2d 576, 579 (D. Md. 2007). Second, Ms. Westmoreland expressed no objection to the Court's use of the documents in its prior Memorandum Opinion. *See, e.g., id.*

racial discrimination. Count III asserted a claim for retaliation. Count IV asserted a claim for hostile work environment (i.e. sexual harassment). The County filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment ("First Motion to Dismiss") on October 27, 2009 (Doc. No. 7).

On August 23, 2010, this Court issued a Memorandum Opinion and Order granting in part and denying in part the County's First Motion to Dismiss. (Doc. Nos. 22–23). The Court denied the First Motion to Dismiss as to Ms. Westmoreland's retaliation claim in Count III. The Court granted with leave to amend the First Motion to Dismiss as to Ms. Westmoreland's hostile work environment claim in Count IV. In dismissing Ms. Westmoreland's claim for hostile work environment, the Court concluded that the Complaint's factual allegations created no nexus between the alleged harassment and her gender. *Westmoreland*, 2010 WL 3369169, at *13.

The Court categorized the claims in Counts I (sex discrimination) and II (racial discrimination) as follows: (1) disparate treatment based on discriminatory reassignment; (2) disparate treatment based on discriminatory discipline; and (3) disparate treatment based on a failure to investigate. The Court took the following actions with respect to these claims: (1) the Court denied the First Motion to Dismiss as to the discriminatory reassignment claim; (2) the Court granted with prejudice the First Motion to Dismiss as to the discriminatory discipline claim; and (3) the Court granted with leave to amend the First Motion to Dismiss as to the failure to investigate claim. In dismissing the failure to investigate claim, the Court concluded that Ms. Westmoreland failed to adequately plead the fourth element of a prima facie case for disparate treatment based on a failure to investigate. That is, the Court determined that Ms. Westmoreland's Complaint failed to identify a comparator or similarly situated person outside

Ms. Westmoreland's protected class who received different treatment. *Westmoreland*, 2010 WL 3369169, at *8.

Ms. Westmoreland filed an Amended Complaint (Doc. No. 26) on September 2, 2010. On the same day, Ms. Westmoreland filed a Motion to Withdraw the Amended Complaint ("Motion to Withdraw") (Doc. 28). Then, still on the same day, Ms. Westmoreland refiled an Amended Complaint (Doc. 29). On September 16, 2010, the County filed a Motion to Dismiss the Amended Complaint ("Second Motion to Dismiss") (Doc. No. 33). On September 21, 2010, Ms. Westmoreland filed a Second Amended Complaint (Doc. No. 35). In response, on September 27, 2010, the County filed a Motion to Strike Plaintiff's Second Amended Complaint ("Motion to Strike") (Doc. No. 36). Additionally, the County filed a Motion to Dismiss the Second Amended Complaint (Doc. No. 38) on October 5. On October 12, Ms. Westmoreland filed a Notice of Withdraw of Second Amended Complaint ("Notice of Withdraw") (Doc. No. 40).

Ms. Westmoreland's Notice of Withdraw moots the County's (1) Motion to Strike and (2) Motion to Dismiss Plaintiff's Second Amended Complaint. Furthermore, the Court will summarily grant Ms. Westmoreland's Motion to Withdraw the Amended Complaint (Doc. 26). This action is proper because (1) Ms. Westmoreland refiled the Amended Complaint on the same day and (2) the County does not object to it. Accordingly, the Court will consider only the County's Second Motion to Dismiss (i.e. Motion to Dismiss the Amended Complaint [Doc. 29]).

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a),

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Compare Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addressing a motion to dismiss, a court should first review a complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1954. In its determination, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under

the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewcz* is consistent with more recent case law).[2]

## III. LEGAL ANALYSIS

Ms. Westmoreland's Amended Complaint contains eight Counts. The County's Second Motion to Dismiss seeks to dismiss only Counts V (sex discrimination), VI (racial discrimination), and VIII (hostile work environment). Counts V and VI assert disparate treatment claims based on a failure to investigate. Count VIII asserts a hostile work environment claim based on gender (i.e. sexual harassment). As they raise a common issue, this Court will consider the sex and racial discrimination claims in Counts V and VI in tandem. The Court will address the hostile work environment claim in Count VIII separately.

---

[2] Although *Twombly* overruled the general 12(b)(6) standard used in *Swierkiewicz*, *Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009), the analysis discussed here remains good law. *Reed v. Airtran Airways*, 531 F. Supp.2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'") (citations omitted).

**A.    Sex and Racial Discrimination Based on a Failure to Investigate**

In its Second Motion to Dismiss, the County argues that Ms. Westmoreland has failed to state claims for disparate treatment based on a failure to investigate. Specifically, the County contends that Ms. Westmoreland cannot establish elements 3 and 4 of the prima facie case for such claims: (a) undergoing an adverse employment action and (b) identifying a similarly situated comparator. In its prior Memorandum Opinion, the Court declared that it was premature to determine whether Ms. Westmoreland had suffered an adverse employment action. *Westmoreland*, 2010 WL 3369169, at *7 (citing *Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001)). In light of this prior ruling, the Court will consider only the argument that Ms. Westmoreland's Amended Complaint fails to establish the existence of a similarly situated comparator.

A modified prima facie case under the *McDonnell Douglas* framework applies to disparate treatment claims based on a failure to investigate. To establish a prima facie case, a Title VII plaintiff must satisfy the following elements: (1) membership in a protected class; (2) satisfactory job performance; (3) subjection to an adverse employment action; and (4) demonstration that similarly situated employees outside the protected class received more favorable treatment. *See Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 Fed. App'x. 351, 353 (4th Cir. 2009) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)).

There is no rigid requirement that a Title VII plaintiff proceeding under a *McDonnell Douglas* framework allege each element of the prima facie case. *Swierkiewicz*, 534 U.S. at 511–15. In *Swierkiewicz*, the Second Circuit upheld the trial court's decision to dismiss Swierkiewicz's Title VII claim on the ground that he failed to adequately plead the elements of a

prima facie case under *McDonnell Douglas*. *Id.* at 509–10. The U.S. Supreme Court reversed. *Id.* at 515. The Supreme Court stressed that the prima facie case is a component in the *McDonnell Douglas* evidentiary framework, not a pleading requirement. *Id.* at 510–11. The Supreme Court concluded that a rigid application of the prima facie case at the pleading stage amounts to a heightened pleading standard that conflicts Federal Rule of Civil Procedure 8(a)(2). *See id.* at 512–15. The Supreme Court noted that Swierkiewicz's complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514 (citation omitted). In view of these allegations, the Supreme Court held that Swierkiewicz's complaint sufficiently stated a claim for relief. *Id.* at 515.

In this case, Ms. Westmoreland's Amended Complaint sufficiently states a disparate treatment claim for a failure to investigate. The facts in this case are comparable to the facts in *Swierkiewicz*. Here, like *Swierkiewicz*, Ms. Westmoreland detailed the events surrounding the Fire Department's failure to investigate her complaints of unfavorable treatment. Furthermore, Ms. Westmoreland provided relevant dates for many of these incidents. Moreover, just as Swierkiewicz named the nationality of persons involved in his termination, so did Ms. Westmoreland amend her Complaint to assert that both male and white employees received favorable treatment in the investigation of their complaints. Therefore, having reviewed the Amended Complaint in its entirety, it is plausible that discovery could reveal the existence of one or more similarly situated comparators.

Furthermore, it is difficult to see how Ms. Westmoreland could demonstrate the existence of a similarly situated comparator without the aid of discovery. To prove the existence of a similarly situated comparator, Title VII plaintiffs must "show that they are similar in all relevant

respects to their comparator." *Haywood v. Locke*, 387 Fed. App'x. 355, 359 (4th Cir. 2010) (citations omitted). Identifying, let alone analyzing, all the relevant ways in which people are comparable is a fact-intensive undertaking. Thus, this requirement is incompatible with the liberal pleading standard enshrined in Rule 8 and reaffirmed by the *Swierkiewicz* Court in the employment discrimination context.

For the foregoing reasons, this Court concludes that the Amended Complaint adequately alleges disparate treatment claims for sex and racial discrimination based on the Fire Department's failure to investigate Ms. Westmoreland's complaints.

**B.     Hostile Work Environment Based on Gender**

In its Second Motion to Dismiss, the County argues that Ms. Westmoreland has failed to state a claim for hostile work environment in her Amended Complaint. Specifically, the County contends that Ms. Westmoreland cannot establish prongs 1, 3, and 4 of the prima facie case for a hostile work environment claim: (a) that the alleged harassment is based on gender; (b) that the alleged harassment is severe or pervasive; and (c) that there is a basis for imputing liability to the employer. The Court will address these arguments in turn.

*1.     Harassment Based on Gender*

Prong 1 of the prima facie case for hostile work environment requires plaintiffs to show that the alleged harassment is based on gender. To make this showing, plaintiffs must establish that gender is the but-for cause of the alleged harassment. *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 339 (4th Cir. 2003) (citations omitted). Plaintiffs may offer comparative evidence regarding the harasser's treatment of both sexes in the workplace to establish but-for causation. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998).

Ms. Westmoreland's factual allegations suffice to state a hostile work environment claim under prong 1. The Amended Complaint asserts that, out of thirty-nine students in the Officer Candidate School, the Fire Department implicated only Ms. Westmoreland in a cheating scandal. The Amended Complaint also alleges that only a "few" African-American women attended the Academy. (Doc. 29, at 4.) Plausibly, the discovery of additional facts could show that (1) Ms. Westmoreland was the only woman in the Officer Candidate School and that (2) she was similarly situated to the male students whom the County did not implicate.

Two additional allegations support the inference that the Fire Department based its alleged harassment on Ms. Westmoreland's gender. First, Ms. Westmoreland alleges that the Fire Department investigated the complaints of similarly situated males with respect to the cheating scandal. Second, Ms. Westmoreland asserts that the Fire Department replaced her with two white males after it involuntarily removed her from the Academy.

In short, Ms. Westmoreland has adequately alleged that her gender was the but-for cause of the Fire Department's alleged harassment.

*2. Severe or Pervasive*

Prong 2 of the prima facie case for hostile work environment requires plaintiffs to show that the alleged harassment is severe or pervasive. Severe or pervasive sexual harassment "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Courts make this determination by considering the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Courts may consider the following circumstances when determining whether the conduct in question alters the conditions of employment and creates an abusive working environment: (1) its severity; (2) its frequency; (3) whether it is humiliating; and (4) whether

supervisory personnel takes part in the harassment. *Id.*; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 927 n.9 (9th Cir. 2000) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

In this case, the Amended Complaint alleges that the Fire Department implicated Ms. Westmoreland of cheating in face of an investigation that cleared her of wrongdoing. The Amended Complaint further asserts that she informed her superiors of this and other discriminatory actions, around which time she allegedly fell victim to recurring instances of adverse treatment. For instance, Ms. Westmoreland contends that the Fire Department engaged in recurring efforts to transfer her from the Academy and that these efforts culminated in her involuntary removal. Likewise, the Fire Department allegedly subjected her to an inordinate number of disciplinary actions. Additionally, Ms. Westmoreland asserts that her immediate supervisor, Mr. Gross, played a role in the alleged harassment she experienced at the Academy. These circumstances align with those that courts have considered when determining whether the conduct in question alters the conditions of employment and creates an abusive working environment. Accordingly, the Amended Complaint adequately alleges a claim under prong 2 of the prima facie case for hostile work environment.

*3. Employer Liability*

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765. Although employers may raise an affirmative defense in some cases, this defense is unavailable where the harassment involves an official act. *See Pa. State Police v. Suders*, 542 U.S. 129, 140–41 (2004). An official act is "an employer-sanctioned adverse action officially changing her employment status or situation." *Id.* at 134.

In this case, the Amended Complaint alleges that Ms. Westmoreland's immediate supervisor played a central role in the harassment. The Amended Complaint also asserts that the "Fire Department" and "other management-level employees at the Academy" played a role in the harassment. (Doc. 29, at 4–5.) These factual assertions, if true, could establish vicarious liability. Furthermore, even assuming that the affirmative defense was otherwise available to the County, the Fire Department's treatment of Ms. Westmoreland in the cheating scandal might constitute an official action. *Compare id.* at 136 (describing an incident in which an employee's supervisors detained her for the unauthorized copying of documents indicating that the employer had mislead her into believing she had failed a job-skills test), *with id.* at 152 n.11 (noting that this incident might have constituted an official act). For these reasons, the Amended Complaint adequately alleges a claim under prong 4 of the prima facie case for hostile work environment.

## V. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's Motion to Dismiss Plaintiff's Amended Complaint; **GRANT** Plaintiff's Motion to Withdraw the Amended Complaint; **DENY-AS-MOOT** Defendant's Motion to Strike Plaintiff's Second Amended Complaint; and **DENY-AS-MOOT** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. Consequently, all of Plaintiff's claims from the Amended Complaint may proceed to discovery. An Order consistent with this Memorandum will follow. The Court will issue a Scheduling Order.

| August 31, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |